UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KRISTY ELLEN DETTINGER,    :
    :CIVIL ACTION NO. 3:17-CV-2224
      Plaintiff,    :
    :(JUDGE CONABOY)
      v.    :
    :
NANCY A. BERRYHILL,    :
Acting Commissioner of    :
Social Security,    :
    :
      Defendant.    :
    :

_____

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Acting Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Doc. 1.) Plaintiff protectively filed her application on June 12, 2014, alleging disability beginning on November 18, 2013. (R. 10.) After Plaintiff appealed the initial August 15, 2014, denial of the claim, a hearing was held by Administrative Law Judge ("ALJ") Randy Riley on March 15, 2016. (*Id.*) ALJ Riley issued his Decision on April 14, 2016, concluding that Plaintiff had not been under a disability as defined in the Social Security Act ("Act") from November 18, 2013, through December 31, 2014, the date last insured. (R. 16.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on October 20, 2017. (R. 1-6.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on December 5, 2017. (Doc. 1.)

She asserts in her supporting brief that the Acting Commissioner's determination should be remanded for the following reasons: 1) the ALJ's residual functional capacity ("RFC") assessment is facially defective; 2) the RFC assessment is unreviewable because the ALJ did not identify any specific longitudinal objective signs or findings that are inconsistent with opinions; and 3) the RFC assessment is not supported by substantial evidence because the ALJ did not reject or explain his failure to reject relevant portions of an opinion to which he assigned great weight.  (Doc. 9 at 7.) For the reasons discussed below, the Court concludes Plaintiff's appeal is properly denied.

## I. Background

Plaintiff was born on November 30, 1975, and was thirty-nine years old on the date last insured.  (R. 15.)  Plaintiff has an associates degree and was a certified nursing assistant.  (R. 42, 150.)  The July 8, 2014, Disability Report indicates Plaintiff alleged that her ability to work was limited by complex seizures, cervical radiculopathy, fatigue, herniated disc, insomnia, migraines with aura, muscle weakness, myalgia, myositis, and obesity.  (R. 148.)

### A.  *Medical Evidence*

The Court will provide a brief summary of medical evidence to provide context for discussion.  Specific evidence relevant to claimed errors will be considered in the context of the arguments

raised.

Plaintiff reported she was working as an in-home care provider when she suffered a work injury on July 22, 2013. (R. 210.) She said she was taking care of a patient who was in bed and he grabbed her around the neck while she was pivoting him which immediately caused her to feel a shooting pain in her neck and left arm. (*Id.*) A July 31, 2013, MRI showed a disc bulge at C5-C6. (R. 212.) Plaintiff had an interlaminar cervical epidural steroid injection at C7-T1 on October 29, 2013. (R. 206.)

Plaintiff reported improvement with injections at Wellspan Pain Management in October 2013 but also reported daily headaches and increased numbness and weakness. (R. 365.) As of November 4, 2013, Plaintiff remained on restricted duty. (R. 210.) She reported to Amit R. Patel, M.D., of OSS Health that she continued to have aching pain and muscle spasms on either side of her neck which was exacerbated by activity and alleviated with heat, ice, and medication. (*Id.*) Physical exam confirmed pain on movement of the neck and tenderness to palpation over the C7 spinous process. (R. 211.)

Plaintiff continued to experience headaches, tingling and numbness of the left arm, and muscle pain/cramping in the neck through 2014. (R. 277-78, 387, 421.) She was treated by Deborah Bernal, M.D., of Wellspan Physiatry from March 2013 through September 2013 at which time Dr. Bernal noted that follow-up with

3

Wellspan Physiatry was not needed and Plaintiff could continue medication management with her pain specialist. (R. 260-81, 412-16.) In November 2014, Asit Upadhyay, D.O., her treating pain management physician beginning in August 2014, diagnosed cervical disc disorder. (R. 421.)

In January 2015, the month after the date last insured, Plaintiff reported to Anthony C. May, M.D., of WellSpan Neurology that her migraines were overall better and the frequency was reduced from more than one a week to two to three a month. (R. 449.) She also reported that she continued to have daily occipital-cervical pain related to her neck pain. (*Id.*) She made similar reports in September 2015, noting that she still had intermittent paresthesias in her left arm and hand, and at times her left hand felt weak and hard to control. (R. 452.)

Plaintiff made similar reports in early 2016 and physical exam showed generalized neck tenderness, decreased neck rotation, and tightness and decreased flex of the paracervical musculature. (R. 588-89.) Diagnoses included chronic neck pain and cervical radiculopathy. (R. 589.)

**B. Opinion Evidence**

**1. Mental Impairment Opinion**

State agency consultant James Vizza, Psy.D., found that Plaintiff did not have a medically determinable mental impairment. (R. 66.) He noted that the record contained no diagnosed mental

impairment.  (*Id.*)

## 2.  **Physical Impairment Opinions**

### a.    **Functional Capacity Evaluation**

Deborah Bernal, M.D., of Wellspain Physiatry treated Plaintiff for neck pain beginning on March 5, 2014, and referred Plaintiff to Wellspan Rehabilitation where Plaintiff had a Functional Capacity Evaluation conducted by Brandon Burkett, PT, DPT, on June 4, 2014. (R. 214-54.)  Plaintiff was evaluated for assessment of her physical and functional capabilities with the referring diagnosis of left arm pain and cervical radiculopathy.  (R. 214.)  The evaluation, which lasted four hours and thirty minutes, contains extensive test results and includes the following findings: Plaintiff could occasionally lift ten pounds waist to shoulder, floor to shoulder, and shoulder to overhead; she could occasionally lift twenty pounds floor to waist; she could occasionally carry twenty pounds; she could frequently sit, stand, walk, climb stairs, bend, stoop, reach forward, and finger; she could occasionally squat, crouch, kneel, reach overhead, handle, and use hand/foot controls.  (R. 215-16.)

The following Final Report Assessment was provided:

> The client presents with primary limitations in pain throughout her cervical spine, specifically in the C7-T1 cervicothoracic junction.  The client also presents with decreased ROM, strength and endurance primarily due to pain.  Due to these deficits, the client has severe difficulty with lifting and patient handling

> activities that are required of her job as an
> in-home aide. . . . The client's main
> difficulties are with material handling in
> order to meet her job demands. The client
> would benefit from a work hardening program
> at this time to address these deficits and
> return her to work full-time, full duty,
> without restriction.

(R. 253.) Plaintiff's prognosis was noted to be fair based on her age, motivation, length of time since the injury, and length of time off work. (*Id.*) In the Recommendations section of the Evaluation, Mr. Burkett stated that Plaintiff tested at the sedentary category and she could work in a sedentary capacity if her employer was able to provide her with work that would fall within her physical abilities. (R. 214.) Mr. Burkett further reported that Plaintiff "provided full physical effort, a consistent and valid effort, a partially reliable report of pain and a reliable report of physical functioning." (*Id.*)

**b.    Treating Physiatrist**

Deborah Bernal, M.D., of Wellspan Physiatry saw Plaintiff in March, April, May, June, and September 2014, and, as noted above, referred Plaintiff for the Functional Capacity Evaluation. (R. 256-81, 412-16.) On June 19, 2014, Dr. Bernal concluded Plaintiff could return to work on sedentary duty as noted in the Functional Capacity Evaluation. (R. 260.)

**c.    Pain Management Specialist**

Asit Upadhyay, D.O., completed a Cervical Spine Medical Source Statement on November 4, 2014. (R. 421-25.) He diagnosed cervical

disc disorder and reported that Plaintiff's prognosis was guarded. (R. 421.) Dr. Upadhyay listed right arm pain with numbness and tingling as chronic and listed the following associated symptoms: tenderness, crepitus, muscle spasm, and reduced grip strength. (*Id.*) He found Plaintiff had motion limitations including 20% extension and left lateral bending; 25% right lateral bending; 40% flexion; and 45% left rotation and right rotation. (*Id.*) He noted Plaintiff did not have severe headache pain associated with her cervical spine impairment and emotional factors did not contribute to her symptoms or limitations. (R. 422.) Dr. Upadhyay also noted that medications caused nausea and drowsiness. (*Id.*) He opined that Plaintiff's impairments lasted or were expected to last for at least twelve months. (*Id.*) He assessed Plaintiff could walk four city blocks without rest or severe pain; she could sit for fifteen minutes at a time before needing to get up; she could stand for twenty minutes before needing to sit or walk; in an eight-hour day she could sit for about four hours total and stand/walk for about two hours total. (R. 423.) Dr. Upadhyay indicated Plaintiff needed a job where she could shift positions at will, she would need to walk around every hour for five minutes, and she would need unscheduled breaks on a daily basis for ten to thirty minutes. (*Id.*) He opined that Plaintiff could never lift and carry fifty pounds, rarely twenty pounds, and occasionally less than that; she could occasionally look down, turn her head to the right or left,

7

look up, or hold her head in a static position; she could frequently twist; she could occasionally stoop, crouch/squat, and climb stairs; and she could rarely climb ladders. (R. 424.) He further opined Plaintiff could reach in front of her body 50% of the time and reach overhead 10% of the time; she would be off task 20% of the time; she was capable of moderate work stress; she would have good days and bad days which would result in her missing more than four days per month, and her impairments were reasonably consistent with the symptoms and functional limitations identified. (R. 424-25.)

## C. *Hearing Testimony*

Plaintiff testified that she was able to drive but the rotation of her neck and movement caused more pain if she did so for an extended period. (R. 44.) She said she was able to climb stairs, walking was not much of a problem. She also said she was able to stand in one position for a period of time on her good days. (R. 44.) When asked by the ALJ if she had any problem sitting, Plaintiff did not report a problem if she was allowed to move, move her neck around, and change positions. (R. 45.)

Upon questioning by her attorney, Plaintiff indicated she would rate her pain at 6/10 on average. (R. 48.) When asked about specific things that aggravated it, she identified pulling the laundry out of the washing machine if she did several loads. (*Id.*) Plaintiff added "constant . . . reaching in and pulling out of

8

things will cause me to have a bad day the next day, or more pain later at night. . . . [I]t seems like almost anything that I do that requires extra movement of my arm . . . or rotation of my neck . . . will cause . . . more pain." (R. 48-49.)  Plaintiff described limitation in the movement of her neck and related difficulties including a problem holding her head in a fixed position.  (R. 50-51.)

ALJ Riley asked Vocational Exert Paul Anderson to consider a hypothetical individual with Plaintiff's age, education, and work experience who was able to do sedentary work, never could push/pull; could occasionally do stairs, balance, stoop, kneel, crouch, and crawl; was limited to frequent rotation, flexion, and extension of the neck; could never reach overhead; had to avoid exposure to extreme cold, excessive noise, bright lights, and excessive vibration; and work was limited to simple, routine, repetitive tasks.  (R. 59-60.)  The vocational expert ("VE") testified that the individual would not be able to perform Plaintiff's past relevant work but there were other jobs she could perform including the exemplary jobs of order clerk for food and beverage, surveillance system monitor, and nut sorter.  (R. 60.)

In his next hypothetical, ALJ Riley added the limitation to only occasional rotation, flexion or extension of the neck.  (*Id.*) The VE responded that the jobs he had indicated would remain. (*Id.*)  When ALJ Riley added that the individual would not be able

to engage in sustained work activity on a regular, continuing basis for eight hours a day, five days a week, for a 40-hour week, the VE said no jobs would be available.  (R. 60-61.)

Plaintiff's attorney then asked if an individual who was limited to sitting four hours a day and standing and walking two hours a day could perform the identified jobs.  (R. 61.)  The VE responded that the individual could not.  (*Id.*)

### D.    ALJ Decision

In his April 14, 2016, Decision, ALJ Riley determined Plaintiff had the following severe impairments through the date last insured: chronic kidney disease, degenerative disc disease of the neck, migraines, obesity, and a seizure disorder.  (R. 12.)  He found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  (R. 13.)

ALJ Riley then assessed that Plaintiff had the RFC to perform sedentary work

> except she can never push and pull, use ladders, or reach overhead.  She is limited to occasional stairs, balancing, stooping, kneeling, crouching and crawling.  She is limited to occasional rotation, flexion, and extension of her neck and she should avoid exposure to extreme cold, as well as avoid exposure to excessive noise, bright lights, irritants, and hazards.  She is limited to no commercial driving, and is limited to work that consists of simple routine repetitive tasks.  Go to sleep

(R. 13.)  With this RFC, the ALJ determined that Plaintiff was not

able to perform her past relevant work.  (R. 15.)  He then found she was able to perform other jobs that existed in significant numbers in the national economy and therefore concluded Plaintiff had not been under a disability from November 18, 2013, through December 31, 2014, the date last insured.  (R. 15-16.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can

---

[1]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. (R. 15-16.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is

limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his

13

decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .")). "However,

14

even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

As set out above, Plaintiff asserts the Acting Commissioner's determination should be remanded for the following reasons: 1) the ALJ's residual functional capacity ("RFC") assessment is facially defective; 2) the RFC assessment is unreviewable because the ALJ did not identify any specific longitudinal objective signs or findings that are inconsistent with opinions; and 3) the RFC assessment is not supported by substantial evidence because the ALJ did not reject or explain his failure to reject relevant portions of an opinion to which he assigned great weight. (Doc. 9 at 7.)

### A. *Facially Defective RFC*

Plaintiff first asserts the RFC is facially defective in that it ends in the incomplete sentence "'[g]o to sleep'" and is therefore unreviewable. (Doc. 9 at 9 (quoting R. 13).) Defendant

responds that the RFC was complete and the quoted phrase "go to sleep" was "obviously a harmless typographical or scrivener's error without any bearing on or relation to the RFC or underlying facts." (Doc. 10 at 5.)  In her reply brief, Plaintiff rejects this assessment and argues that the error is not harmless because "[t]his is an incomplete sentence within the residual functional capacity assessment which - if completed - could change the outcome of the case."  (Doc. 11 at 2.)  The Court concludes Plaintiff has not satisfied her burden of showing that the claimed error is cause for remand.

"An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover."  *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quoting *Renchenski v. Williams*, 622 F.3d 315, 341 (3d Cir 2010)).  In other words, "a remand is not required . . . [if] it would not affect the outcome of the case."  *Rutherford*,  399 F.3d at 553.  "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (1969); *Woodson v. Comm'r of Social Security*, 661 F. App'x 762, 766 (3d Cir. 2016) (citing *Shinseki*, 556 U.S. at 409) (a plaintiff must point to specific evidence that demonstrates his claimed error caused harm); *Holloman v. Comm'r of Social Security*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shineski*, 556 U.S. At

409) (a plaintiff must show how the claimed error made a difference beyond a mere assertion that it did so).

The Court concludes Plaintiff has not shown that the phrase "[g]o to sleep" found at the end of the RFC assessment precludes meaningful review (Doc. 9 at 9; Doc. 11 at 2). To satisfy her burden of showing harmful error, Plaintiff must do more than assert that, if completed, the phrase could change the outcome of the case. *Holloman*, 639 F. App'x at 814. While Plaintiff maintains the phrase cannot be a scrivener's error (Doc. 11 at 2), the conclusory assertion does not show how it has "any bearing on or relation to the RFC or underlying facts" (Doc. 10 at 5). Without such a relationship, the Court cannot conclude that Plaintiff has satisfied her burden of showing harmful error and cannot conclude that meaningful review is precluded. Therefore, the claimed error is not cause for remand.

## B. *Opinion Review*

Plaintiff maintains the ALJ improperly assigned little weight to Dr. Upadhyay's opinion and improperly found the Functional Capacity Evaluation better supported. (Doc. 9 at 11.) Defendant responds that substantial evidence supports the ALJ's decision to assign limited weight to the opinion. (Doc. 10 at 7.) The Court concludes Plaintiff has not shown the claimed error is cause for remand.

Under applicable regulations and the law of the Third Circuit,

17

a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight.[2] *See*, *e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). Sometimes called the "treating physician rule," the principle is codified at 20 C.F.R. § 404.1527(c)(2), and is widely accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling

---

[2]    Though not applicable here, the regulations have eliminated the treating source rule for claims filed on or after March 27, 2017,  and in doing so have recognized that courts reviewing claims have "focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our decision."  82 FR 5844-01, 2017 WL 168819, *at 5853 (Jan. 18, 2017).  The agency further stated that in its experience in adjudicating claims using the treating source rule since 1991, the two most important factors for determining persuasiveness are consistency and supportability, which is the foundation of the new regulations.  *Id.*  Therefore, the new regulations contain no automatic hierarchy for treating sources, examining sources, or reviewing sources, but instead, focus on the analysis of these factors.  *Id.*  20 C.F.R. § 404.1520c addresses the evaluation of opinion evidence for cases filed on or after March 27, 2017.

weight." 20 C.F.R. § 404.1527(c)(2).[3] "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); *see also Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject

---

[3] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight give your treating source's opinion.

the treating physician's assessment, an ALJ may not make

"speculative inferences from medical reports and may reject a

treating physician's opinion outright only on the basis of

contradictory medical evidence and not due to his or her own

credibility judgments, speculation or lay opinion." *Morales*, 225

F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.

1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Medical opinions entitled to controlling weight are those from

"acceptable medical sources" which, by definition, include licensed

physicians and psychologists, and licensed advanced practice

registered nurses and licensed physician assistants for impairments

within his or her licensed scope.  20 C.F.R. §1502(a); 20 C.F.R. §

404.1527(a).  Opinions from "medical sources" who are not

"acceptable medical sources" are also considered.  20 C.F.R. §

404.1527(f).  The definition of  "medical source" includes an

individual who is licensed as a healthcare worker by a State and

working within the scope of practice permitted.  20 C.F.R. §

404.1502(d).  An opinion from such an individual is considered

using the factors applicable to acceptable medical sources (20

C.F.R. § 404.1527(c)(1) through (c)(6)) and, in some cases, the

opinion may outweigh the medical opinion of an acceptable medical

source.  20 C.R.R. § 404.1527(f).  By way of example, the

regulation provides that

> it may be appropriate to give more weight to
> the opinion of a medical source who is not an

> acceptable medical source if he or she has
> seen the individual more often than the
> treating source, has provided better
> supporting evidence and a better explanation
> for the opinion, and the opinion is more
> consistent with the evidence as a whole.

*Id.*

ALJ Riley considered physical impairment opinion evidence and assigned the Functional Capacity Evaluation ("FCE") great weight on the basis that the report was very thorough and well supported. (R. 15.) He also assigned great weight to Dr. Bernal's opinion that Plaintiff should remain at sedentary duty because he found her opinion consistent with the record and the FCE. (*Id.*) He assigned limited weight to Dr. Upadhyay's opinion, finding a number of the limitations more extensive than those identified in the FCE and he considered the FCE to be better supported. (*Id.*) ALJ Riley added that the FCE "took into account observed testing of the claimant over a period of time. Although [Dr. Upadhyay's Cervical Spine Medical Source Statement] reflects ongoing pain, it does not explain [why] the claimant would need to miss so many days per month, or why she is as limited as the physician noted." (*Id.*)

Pursuant to the relevant authority set out above, ALJ Riley was entitled to attribute greater weight to the FCE and he explained his reasons for doing so--reasons acceptable under the applicable regulation. *See* 20 C.F.R. § 404.1527(c)(1)-(6), (f). While the ALJ does not identify the limitations which are more extensive in Dr. Upadhyay's opinion than in the FCE, the Court

rejects Plaintiff's assertion that the rationale should be discounted as conclusory (*see* Doc. 9 at 11). The ALJ cites evidence which the Court finds specific enough to support his conclusion that Dr. Upadhyay found Plaintiff more limited than the FCE and he adequately explains why the FCE is entitled to greater weight. (*See* R. 15.) Importantly, the FCE was conducted on reference of Dr. Bernal, Plaintiff's treating physiatrist, who saw Plaintiff five times, Dr. Bernal endorsed the FCE findings and opined that Plaintiff was capable of sedentary work, and ALJ Riley assigned great weight to Dr. Bernal's opinion. (R. 15, 214, 260.) These associations undermine Plaintiff's argument that Dr. Upadhyay's longitudinal treatment trumps the one-day FCE. (*See* Doc. 9 at 14.) Plaintiff's argument regarding time spent with the provider is also undermined by the fact that the four-and-one-half hour FCE included specific intensive testing (R. 215-54) where no such testing is referenced in Dr. Upadhyay's opinion and his office notes indicate that only his initial August 19, 2014, physical exam addressed relevant neck and cervical spine issues. (*See* R. 429-30, 433, 436, 439, 442.)

Plaintiff provides no adequate support for her argument that the ALJ's failure to analyze all § 404.1527 factors precludes a finding that his opinion assessment is based on substantial evidence. (*See* Doc. 9 at 13.) Nothing in the regulations requires precise language or consideration of every factor identified.

22

Rather, courts have concluded that a formulaic consideration of evidence is not required--an ALJ is not obligated to consider every factor outlined in the rulings and regulations but must offer adequate reasons for discounting an opinion. *See*, *e.g.*, *Sanborn v. Commissioner of Social Security*, 613 F. App'x 171, 176 (3d Cir. 2015) (not precedential). Further, where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). Here the Court concludes ALJ Riley explained his opinion assessments in sufficient detail to allow meaningful review and further concludes Plaintiff has not shown that the claimed error is cause for remand.

## C. Inadequate FCE Consideration

Plaintiff contends the ALJ failed to include limitations such as occasional handling, frequent forward reaching, and frequent fingering which were established in the Functional Capacity Evaluation but not included in the RFC or questions to the vocational expert. (Doc. 9 at 15.) Defendant responds that this purported failure is, at most, harmless error because at least one of the exemplary jobs identified by the VE does not require any

handling, reaching, or fingering according to the Dictionary of Occupational Titles ("DOT") definition. (Doc. 10 at 18-19 (citing DOT 379.367-010, 1991 WL 673244 (G.P.O.)).) In her reply brief, Plaintiff asserts Defendant's argument must fail as it is an impermissible post hoc rationalization. (Doc. 11 at 6.) The Court concludes remand is not required because Plaintiff has not shown that the alleged error caused harm.

As set out above, an error is harmless when there is no set of facts upon which the plaintiff could recover, i.e., if remand would not affect the outcome of the case. *Brown*, 649 F.3d at 195; *Rutherford*, 399 F.3d at 553. Plaintiff bears the burden of showing that an error is harmful and must do so with specificity. *Shinseki*, 556 U.S. at 409 (1969); *Woodson*, 661 F. App'x at 766; *Holloman*, 639 F. App'x at 814.

The Court rejects Plaintiff's position which is essentially an argument that a per se rule of prejudice requires remand here (Doc. 9 at 17; Doc. 11 at 6-7). Such a rule is not consistent with *Shinseki's* explanation of proper harmless error analysis and the application of the *Shinseki* holding to lower court review of a Social Security applicant's appeal. *Shinseki*, 556 U.S. at 407-10; *Molina v. Astrue*, 674 F.3d 1104, 1118-21 (9th Cir. 2012). Harmlessness should be determined "through the case-specific application of judgment, based upon examination of the record," and not "through the use of mandatory presumptions and rigid rules."

24

*Shinseki*, 556 U.S. at 407; *Molina*, 674 F.3d at 1118.  A more rigid approach would require the reviewing court to reverse in many cases where it is "obvious from the record . . . that the error made no difference."  *Id.*

Here the record shows ALJ Riley did not include credibly established limitations, *see Rutherford*, 399 F.3d at 554, in his RFC or in a hypothetical to the VE.  While this conclusion supports a finding of error, the exclusion of the FCE's findings that Plaintiff had limitations in her abilities to handle, reach forward, and finger is not cause for remand if "it is obvious from the record that the error made no difference," 556 U.S. at 407, i.e., if remand would not affect the outcome of the case, 399 F.3d at 553.

The Court has no basis to conclude that remand would affect the outcome of the case because at least one of the exemplary jobs––that of surveillance monitor––does not require prohibited handling, reaching, or fingering or otherwise call for abilities beyond Plaintiff's capability.  DOT 379.367-010, 1991 WL 673244.  Plaintiff does not refute Defendant's argument on this point (*see* Doc. 10 at 18-19) or otherwise dispute her ability to perform the position of surveillance monitor.  Nor does she dispute that the identification of one position which she is able to perform is sufficient to find that the ALJ's step five determination is supported by substantial evidence pursuant to 20 C.F.R. §

416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.")  Thus, in the circumstances presented, the Court cannot conclude that remand might lead to a different result--if the excluded limitations were added to the hypothetical provided to the VE, the surveillance monitor position would remain available and Plaintiff would be found not disabled because a job existed in significant numbers in the national economy which she could perform.  Based on this determination, remand is not required for further consideration of ALJ Riley's RFC assessment and step five conclusion.

## V. Conclusion

For the reasons discussed above, the Court concludes Plaintiff's appeal of the Acting Commissioner's decision is properly denied.  An appropriate Order is filed simultaneously with this Memorandum.


                                    S/Richard P. Conaboy
                                    RICHARD P. CONABOY
                                    United States District Judge

DATED: August 8, 2018